# 21-1933

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

CHUKWUEMEKA OKPARAEKE, AKA Emeka

(Federal Prisoner: 78867054),

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF AND APPENDIX FOR THE APPELLANT**

CHUKWUEMEKA OKPARAEKE
*PRO SE* APPELLANT
NO. 78867-054
FCI FAIRTON
P.O. BOX 420
FAIRTON, NEW JERSEY 08320

GEORGIA J. HINDE
*Standby Appointed Counsel for*
  *Pro Se Appellant Chukwuemeka Okparaeke*
228 Park Avenue South
New York, New York  10003
(212) 727-2717

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . 3

    A.  The Plea Proceedings. . . . . . . . . . . . . . . 5

    B.  The Defendant's Motion To
       Withdraw His Guilty Plea. . . . . . . . . . . . . 11

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . 15

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 16

THE DEFENDANT'S CONVICTIONS SHOULD BE VACATED AND HIS
WITHDRAWAL FROM THE PLEA AGREEMENT SHOULD BE PERMITTED. . . . 16

    A.  Applicable Law and Standards of Review. . . . . . . 16

    B.  The District Court Erred When Accepting
       Appellant Okparaeke's Guilty Plea To Count One. . . . 17

        (1) The Plea Was Not Supported By
           An Adequate Factual Basis. . . . . . . . . . . 17

        (2) The Defendant Is Legally Innocent
           Of Count One. . . . . . . . . . . . . . . . 20

        (3) AH-7921 Was Not Lawfully Scheduled
           As A Controlled Substance. . . . . . . . . . . 22

        (4) The DEA Scheduled The Wrong
           Chemical Substance. . . . . . . . . . . . . . 24

    C.  The District Court Erred When Accepting
       Appellant Okparaeke's Guilty Plea To Count Two. . . . 25

        (1) The Plea Was Not Supported By
           An Adequate Factual Basis. . . . . . . . . . . 25

        (2) The Defendant Is Legally Innocent
           Of Count Two. . . . . . . . . . . . . . . . 28

i

**TABLE OF CONTENTS**

**Page**

    D.   The District Court Erred When Accepting
        Appellant Okparaeke's Guilty Plea To Count Three.. . 32

       (1) The Plea Was Not Supported By
           An Adequate Factual Basis.. . . . . . . . . . 32

       (2) The Court's Explanation of
           Materiality Was Wrong.. . . . . . . . . . . . 33

    E. Withdrawal From The Plea Agreement
       Should Be Permitted.. . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . 37


**APPENDIX TABLE OF CONTENTS:**

Docket Entries. . . . . . . . . . . . . . . . . . . . A.1
Plea Agreement (September 22, 2020).. . . . . . . . . . A.22
Superseding Information (October 15, 2020). . . . . . . A.30
Plea Transcript (October 15, 2020). . . . . . . . . . . A.35
District Court Order Accepting Plea (February 4, 2021). . . A.93
Defendant's Motion to Withdraw Plea (May 14, 2021). . . . . A.94
Declaration of Gregory P. Dudley, Ph.D.. . . . . . . . A.118
Defendant's Reply on Motion to Withdraw Plea
  (June 17, 2021).. . . . . . . . . . . . . . . . . A.127
Court's Order Denying Motion to Withdraw Plea
  (July 16, 2021).. . . . . . . . . . . . . . . . . A.130
Portion of Sentencing Transcript (July 30, 2021)
  Discussing Defendant's Supplement to Motion
  to Withdraw Plea. . . . . . . . . . . . . . . . . A.139
Defendant's Written Supplement to Motion to
  Withdraw Plea (Received August 4, 2021). . . . . . A.145
Defendant's Notice of Appeal (Received August 4, 2021). . A.146
Court's Order Denying Supplemental Motion
  To Withdraw Plea (August 27, 2021).. . . . . . . . A.147
Judgment (November 1, 2021).. . . . . . . . . . . . . A.149

ii

## TABLE OF AUTHORITIES

**Cases**:                                                           **Page**

Dole v. United Steelworkers of America,
  494 U.S. 26 (1990). . . . . . . . . . . . . . . . . . . . . 29

Houston v. Lack,
  487 U.S. 266 (1988). . . . . . . . . . . . . . . . . . . . 20

Lawrence + Mem. Hosp. v. Burwell,
  812 F.3d 257 (2d Cir. 2016) . . . . . . . . . . . . . . . 31

Mach Mining, LLC v. Equal Employment Opportunity Commission,
  575 U.S. 480 (2015). . . . . . . . . . . . . . . . . . . 29

National Railroad Passenger Corporation v. Morgan,
  536 U.S. 101 (2002). . . . . . . . . . . . . . . . . . . 29

Railway Labor Executives Ass'n v. ICC,
  735 F.2d 691 (2d Cir. 1984). . . . . . . . . . . . . . . 31

United States v. Albarran,
  943 F.3d 106 (2d Cir. 2019). . . . . . . . . . . . . 19, 26

United States v. Caplan,
  703 F.3d 46 (2d Cir. 2012). . . . . . . . . . . . . . . 34

United States v. Doyle,
  981 F.2d 591 (1st Cir. 1992). . . . . . . . . . . . . . 21

United States v. Juncal,
  245 F.3d 166 (2d Cir. 2001). . . . . . . . . . . . . . . 19

United States v. Lange,
  528 F.2d 1280 (5th Cir. 1976). . . . . . . . . . . . . . 32

United States v. Lopez,
  385 F.3d 245 (2d Cir. 2004). . . . . . . . . . 17, 21, 34

United States v. Maher,
  108 F.3d 1513 (2d Cir. 1997). . . . . . . . . . . . 18, 19

United States v. Pressley,
  469 F.3d 63 (2d Cir. 2006). . . . . . . . . . . . . . . 31

United States v. Rivernider,
  828 F.3d 91 (2d Cir. 2016). . . . . . . . . . . . . . . 16

iii

## TABLE OF AUTHORITIES

**Cases**:                                                        **Page**

United States v. Schmidt,
  373 F.3d 100 (2d Cir. 2004).. . . . . . . . . . . . . . . . . 17

United States v. Turkette,
  452 U.S. 576 (1981).. . . . . . . . . . . . . . . . . . . . . 29

**Statutes and Rules**:

5 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . 23

5 U.S.C. § 706(2).. . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . 1, 32, 33

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3237. . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 3742(a).. . . . . . . . . . . . . . . . . . . . . . 2

21 C.F.R. § 1308.11(b)(5).. . . . . . . . . . . . . . . . . . 25

21 U.S.C. § 811.. . . . . . . . . . . . . . . . . . . 22, 23, 25

21 U.S.C. § 802(32).. . . . . . . . . . . 17, 20, 21, 26, 28

21 U.S.C. § 812.. . . . . . . . . . . . . . . . . . . . . . . 22

21 U.S.C. § 813.. . . . . . . . . . . . . . . 1, 4, 19, 29-31

21 U.S.C. § 841.. . . . . . . . . . . . . . . . . . . . . 1, 30

21 U.S.C. § 952.. . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 960.. . . . . . . . . . . . . . . . . . . . 1, 28-31

21 U.S.C. § 963.. . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . . . . 27

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2106. . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 4(b), Fed. R. App. P.. . . . . . . . . . . . . . . . . . . 2

Rule 32(a)(7), Fed. R. App. P.. . . . . . . . . . . . . . . . 37

Rule 11(b)(3), Fed. R. Crim. P. . . . . . . . . . . 17, 19, 34

Rule 11(c), Fed. R. Crim. P.. . . . . . . . . 2, 16, 17, 34, 35

Rule 11(d), Fed. R. Crim. P.. . . . . . . . . . . . . . . 16, 17

Rule 11(e), Fed. R. Crim. P.. . . . . . . . . . . . . . . . . 17

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**Docket No. 21-1933**

**UNITED STATES OF AMERICA,**

**Appellee,**

**- against -**

**CHUKWUEMEKA OKPARAEKE, AKA Emeka,**

**Defendant-Appellant.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**BRIEF AND APPENDIX FOR THE APPELLANT**

## PRELIMINARY STATEMENT

Chukwuemeka Okparaeke, a first offender, appeals from a judgment of conviction based on his guilty plea to charges that he possessed and distributed a controlled substance analogue, U-47700, of a controlled substance known as AH-7921, in violation of 21 U.S.C. §§ 813, 841(a)(1), and 841(b)(1)(C); imported and attempted to import 100 grams or more of another controlled substance analogue, acryl fentanyl, of the controlled substance fentanyl, in violation of 21 U.S.C. §§ 813, 952(a), 960(a)(1), 960(b)(1)(F), and 963; and made a false statement to government officials, in violation of 18 U.S.C. § 1001. On July 30, 2021, the

1

United States District Court for the Southern District of New York (Roman, J.) sentenced Mr. Okparaeke to concurrent terms of 180 months, 120 months, and 22 months respectively for these three convictions after denying Mr. Okparaeke's motion to withdraw his guilty plea.

With this appeal, Mr. Okparaeke asks this Court to reverse the district court's decision denying his motion to withdraw his guilty plea, and to find that the district court harmfully erred when accepting his guilty plea even though none of the charges were supported by an adequate factual basis. Mr. Okparaeke also asks to withdraw from his plea agreement that the district court did not accept under Rule 11(c)(4) of the Federal Rules of Criminal Procedure.

**JURISDICTIONAL STATEMENT**

Subject matter jurisdiction in the district court was conferred by 18 U.S.C. § 3231, granting original and exclusive jurisdiction over all offenses against the United States, including the defendant's offenses of conviction. Appellant filed a timely notice of appeal on August 4, 2021, prior to the entry of the final judgment on November 1, 2021 (*see* Appendix ("A.") hereto at A.21, A.146, A.149-57). This Court's jurisdiction is invoked pursuant to 18 U.S.C. § 3742(a), 28 U.S.C. §§ 1291, 2106, and Rule 4(b), Federal Rules of Appellate Procedure.

**STATEMENT OF FACTS**

As detailed in the appellant's presentence report ("PSR", copies of which will be forwarded to the Court for filing under seal during the pendency of this appeal), agents of the U.S. Postal Inspection Service began an investigation in 2016 into an online vendor's suspected trafficking of substances presumed to be illegal fentanyl analogues (PSR ¶¶ 10-20). In January and February 2017, during a random screening, Customs and Border Protection agents at John F. Kennedy Airport intercepted packages from Hong Kong that were addressed to appellant Chukwuemeka Okparaeke at his Middletown, New York address (PSR ¶¶ 14-15). The packages had contained quantities of acryl fentanyl and another controlled substance (4-ANPP), but agents replaced these contents with other sham materials for the purpose of controlled deliveries (PSR ¶¶ 14-15). The sham packages were later collected by Okparaeke at the Middletown Post Office (PSR ¶ 14).

Over the course of the investigation, agents also made a number of controlled purchases of fentanyl analogue substances from an online "darknet" vendor ("Fentmaster") who mailed orders to customers through the U.S. Postal Service (PSR ¶¶ 10-12, 16). By March 20, 2017, after surveillance led agents to believe that Okparaeke was filling "Fentmaster" orders from a residence in Kearny, New Jersey, agents arrested Okparaeke and searched the premises pursuant to a warrant, finding quantities of U-47700,

3

acryl fentanyl, furanyl fentanyl, and 4-ANPP, as well as mailing envelopes for the distribution of these substances to customers (PSR ¶¶ 16, 21). One presumed customer who may have purchased U-47700 in November 2016 from "Fentmaster" died from an overdose of the drug (PSR ¶¶ 18-19).

After his arrest, a grand jury originally charged Okparaeke with attempting to import and distribute acryl fentanyl and with conspiring to distribute each of the controlled substance analogues seized from the New Jersey premises at the time of his arrest (ECF No. 15). Okparaeke moved to dismiss the charges because none indicated that any analogue substance had been "intended for human consumption", as required under 21 U.S.C. § 813 (ECF No. 39). This defect was cured when a superseding indictment was returned in March 2018 alleging that element in each of the three counts, and in two additional substantive charges as well (ECF No. 41). By January 2019, grand juries had returned two additional superseding indictments (ECF Nos. 75, 77), each alleging additional charges. All of the indictments also contained an allegation requiring the forfeiture of all proceeds of the charged offense conduct, including some 680 bitcoins deposited in various online accounts.

Soon after the return of the last indictment, Okparaeke informed the district court that he wished to discharge his counsel of record and represent himself. After a thorough inquiry

4

that included advice to the defendant about the statutory sentencing exposure for each of the charges he faced (one of which carried a mandatory minimum term of 20 years), the district court relieved former counsel and granted Okparaeke's request, appointing standby counsel with Okparaeke's consent (ECF No. 80-81, 87).

Okparaeke pursued a few additional pretrial applications in the months that followed, but the arrival of the COVID pandemic in March 2020 and the adoption of the emergency measures it entailed prevented the case from being scheduled for trial. Then, on September 3, 2020, the parties informed the court that Okparaeke intended to enter a guilty plea (ECF No. 144).

Before that occurred, the government learned that bitcoins that were subject to forfeiture in the pending indictment had been transferred to a different account in November 2019 (PSR ¶ 20). When the government asked Okparaeke about this development on September 15, 2020, he suggested that a third party may have hacked the account and stolen the bitcoins, but he soon after surrendered 680 bitcoins to the government (PSR ¶ 20).

## A. **The Plea Proceedings**

On September 22, 2020, the government sent Okparaeke a plea agreement offering to resolve the charges against him in exchange for his guilty plea to three counts of a superseding information alleging his (1) distribution of a controlled substance analogue

5

(U-47700) of a controlled substance (AH-7921) in November 2016; (2) importation of acryl fentanyl in January and February 2017; and (3) false statements to representatives of the government on September 15, 2020 (A.22-23). One of these charges carried a mandatory minimum term of ten years (A.22). The agreement also required that the defendant admit as relevant conduct that the offenses involved specified quantities of acryl fentanyl, furanyl fentanyl, U-47700, and 4-ANPP, and that the distribution of U-47700 resulted in the death of an individual (A.23).

In other provisions of the plea agreement, the government agreed not to prosecute Okparaeke further for the conduct underlying the charges in the superseding information and to dismiss open counts at the time of sentencing (A.23); Okparaeke agreed to the forfeiture provisions in the information (A.23-24); both parties agreed to a stipulated Sentencing Guidelines range of 210-262 months based on a specified application of the Guidelines that was not binding on the court (A.24-26); and Okparaeke agreed not to appeal any sentence within or below the stipulated Guideline range (A.26-27).

Based on this agreement that Okparaeke accepted on October 7, 2020 (A.51-52), the government filed the superseding information on October 15, 2020 (A.30-34). That same day, the parties appeared virtually before a magistrate judge and, after Okparaeke waived his rights to appear in person (A.38-40), to be represented by

6

counsel (A.41-42), to prosecution by indictment (A.44-47), and to have his plea allocution conducted by a district judge (A.47-49), the magistrate judge first asked about the plea agreement and Okparaeke's understanding of its terms (A.51-53). The court then advised about the statutory penalties carried by each charge, and the consequences of violating supervised release (A.53-56). The court invited the government to summarize the agreement as to forfeiture and confirmed with Okparaeke that he had agreed to the preliminary order of forfeiture (A.56-57).

Next, after confirming that Okparaeke is a United States citizen and summarizing the collateral consequences of a conviction, the court went on to explain the application of the advisory Sentencing Guidelines, the stipulated range 210-262 months in the plea agreement, and sentencing procedures (A.58-61). The court also confirmed that Okparaeke had agreed to waive his right to appeal a sentence within or below the stipulated range, and with other provisions detailed in the agreement, including the relevant conduct specified by the government (A.61-64).

The court then detailed the rights Okparaeke would have to give up if he pleaded guilty, including the right to a speedy and public trial, to a presumption of innocence, to have the government prove every element beyond a reasonable doubt, to a unanimous jury verdict, to confront and cross-examine witnesses, to testify or not on his own behalf, and to the assistance of

7

counsel, to all of which Okparaeke said he understood and had no questions (A.64-66). The government then discussed the elements of each of the charges, and the evidence the government would offer at a trial, including the testimony of Customs officers who intercepted packages containing acryl fentanyl from Hong Kong that were addressed to Okparaeke in Middletown, New York; the testimony of other law enforcement officers about the controlled deliveries of those packages that the defendant claimed; about controlled purchases of U-47700 and furanyl fentanyl from the defendant's online vendor site and the seizure of those controlled substances from the defendant's premises; the testimony of postal workers who observed the defendant mailing packages; evidence that led the government to believe that an individual who died from a U-47700 overdose had purchased drugs from the defendant; the testimony of expert chemists to establish that U-47700 is substantially similar to AH-7921 and that acryl fentanyl is substantially similar to fentanyl; and the testimony about false statements the defendant made to the government that bitcoins may have been stolen from his online account (A.66-73).

Although Okparaeke had some objections to the government's summary of its evidence, he advised the court that he wished to plead guilty to each of the charges (A.69-70, A.74, A.76). Also, apart from observing that "the criminal justice system is inherently coercive", Okparaeke agreed that he had not been

8

threatened or coerced to plead guilty and he did so of his own volition (A.76-77). He also confirmed that no promises had been made other than those in the plea agreement, and no one had promised him a specific sentence (A.77).

Okparaeke then admitted that he dropped off packages containing U-47700 on November 8, 2016, at a New York post office, he knew the substance was for human consumption, he knew the substance was illegal in some states and countries, and he knew it was substantially similar to an opioid, although he did not know U-47700 was an analogue of AH-7921 since he had never heard of AH-7921 (A.78, A.80). He also admitted he knowingly and voluntarily sold U-47700, that he understood people bought it to consume it, and that he knew the substance was substantially similar to a Schedule I or II controlled substance, even if he did not know which one (A.81-82). He further agreed that this conduct occurred in Middletown, New York, and that his offenses overall involved the quantities of substances specified in the plea agreement as relevant conduct, each of which the court itemized again at the plea proceeding (A.23, A.86-87).

Next, Okparaeke admitted that, in January and February 2017, he knowingly and voluntarily imported 100 grams of acryl fentanyl from outside the United States to his apartment in Middletown, New York, that he knew this substance was substantially similar to fentanyl, and that it was intended for human consumption (A.82-83,

9

A.86). Last, Okparaeke admitted that he was transported to a Post Office in lower Manhattan on September 15, 2020, to provide information to the government to allow them to collect bitcoins for forfeiture, and that, while he was there, he told the government that someone may have hacked into his account and moved the bitcoins, a statement that was not true (A.83-86). Okparaeke gave the government access to the bitcoins a day or two later, "as soon as [he] had the ability to give them the ability to access the bitcoins" and "as soon as he could" (A.85). He also agreed that he knew the statement he made about his account being hacked "was improbable, if not impossible", so he "knew it was false" (A.85). Okparaeke also understood that his false statement about the bitcoins being stolen was "important to the government's investigation", an answer he provided in response to the government's request to clarify that the defendant understood that his false statements were material (A.88-89).

Based on this allocution, and after confirming that it was Okparaeke's wish to plead guilty to each of the charges in the superseding information, the magistrate judge found the defendant "fully competent and capable of entering an informed plea", that the plea was knowing and voluntary, and that it was supported by an independent factual basis, thus permitting a recommendation to the district court to accept the defendant's guilty plea (A.90-91). The matter was then adjourned for the preparation of a

10

presence report (A.90). A few months later, on February 4, 2021, the district court accepted the magistrate judge's report and recommendation and Okparaeke's guilty plea (A.93).

**B.   The Defendant's Motion To Withdraw His Guilty Plea**

On May 14, 2021, Okparaeke filed a motion asking to withdraw his guilty plea to Counts One and Three of the superseding information (A.94-117). With respect to Count One, Okparaeke had learned that AH-7921 – the substance he indicated at the time of his guilty plea he had not heard of before (A.78, A.80) – had not been properly added as a Schedule I controlled substance because the United Nations Commission on Narcotic Drugs ("U.N. Commission") had identified a different chemical compound as AH-7921 than the compound identified in the Federal Register (as discussed in the argument below). Also, the DEA had not followed the required administrative procedures when it scheduled not only AH-7921 but its isomers, salts, esters, and ethers in the Code of Federal Regulations, additional substances that the U.N. Commission had not specified. Given these differences and defects in the scheduling of AH-7921 (A.95-96, A.128), Okparaeke argued that U-47700 could not be a controlled substance analogue of an improperly scheduled substance, and that he was therefore legally innocent of Count One.

With respect to Count Three, Okparaeke asked to withdraw his guilty plea because it was not supported by an adequate factual

11

basis. As he explained, he did not admit with his guilty plea that he controlled any bitcoins, but only that he told the government something that he thought unlikely: that the bitcoins had been stolen (A.96).

The government opposed Okparaeke's motion to withdraw his guilty plea, challenging his assertion that there is any difference between the substance identified by the U.N. Commission and the substance listed in Schedule I (ECF No. 186 at 6-10). The government provided expert opinions on the subject, including a declaration by Professor Gregory B. Dudley, Ph.D., a defense expert, in order to demonstrate that the chemical structure identified in Okparaeke's motion to dismiss was not AH-7921 (ECF No. 186 at 9-10 and Exhibit C and H, A.118-26). In the same declaration, however, Dr. Dudley also opined that U-47700 is not substantially similar in core structure and chemical functionality to AH-7921; that neither furanyl fentanyl nor acryl fentanyl is substantially similar to the controlled substance fentanyl; and that none of the charged substances should be treated as controlled substance analogues because of differences between their chemical structures and the scheduled controlled substance to which they are assertedly analogous (A.120-26). The government's response also contended that Okparaeke's statements with respect to Count Three afforded an ample factual basis for that offense (ECF No. 186 at 11-17).

12

In an opinion issued on July 16, 2021, the district court denied Okparaeke's motion to withdraw his guilty plea (A.130-38). After summarizing Okparaeke's grounds for withdrawal and reciting the legal standards that apply to such applications (A.131-34), the court rejected the argument that AH-7921 was improperly scheduled because the U.N. Commission's directive requiring its scheduling referred to the substance by "shorthand only" (*i.e.*, "AH-7921"), and did not refer to a specific chemical name (A.135). Also, the court remarked that the government had offered evidence that the defendant did not rebut showing that members of the scientific community consider the differing chemical names for AH-7921 to apply to the same substance (A.135). Accordingly, the court held that the defendant did "not provide sufficient evidence for the Court to question the validity of the scheduling of AH-7921", and that his theory of legal innocence therefore did not amount to a "fair and just reason" to permit his withdrawal of his guilty plea in a case where the defendant did "not dispute the voluntariness of his guilty plea or the accuracy of the statements he made during his allocution" (A.135-36).

With respect to Count Three, the court rejected the claim that the defendant's allocution did not establish that he knew the bitcoins that were subject to forfeiture were stolen or were under his dominion (A.136). In the court's view, the defendant's admissions that he made statements to the government that were not

true, and that he gave control of the bitcoins to the government soon after making those untrue statements, made his "legal innocence argument unpersuasive" (A.137). Since the defendant did not dispute the voluntariness of his guilty plea or the accuracy of his allocution statements, the court again concluded that there was no fair and just reason to permit withdrawal of the plea (A.137-38).

Okparaeke thereafter appeared for sentencing on July 30, 2021 (A.139). At the beginning of that proceeding, he asked the court about a supplement to his motion to withdraw his guilty plea that did not yet appear on the docket sheet, although he had mailed it to the court at least two weeks earlier (A.141). When the court and the government confirmed that no mailing had been received, Okparaeke read into the record the following issue that he wished to preserve for appeal (A.142):

> U-47700 is an isomer[] of AH-7921 and, thus, was a controlled substance when the DEA added isomer[]s of AH-7921 to Schedule I. Therefore, I'm innocent of Count One of the criminal information because U-47700 can't be a controlled substance and a controlled substance analogue at the same time.

The court advised Okparaeke that, as it had not received this supplement and the government had not been afforded any opportunity to respond, there was "nothing before us" (A.143). The court then proceeded with Okparaeke's sentencing, imposing below-Guideline concurrent terms of 180 months, 120 months and 22 months

14

for the three counts of conviction (A.151), a sentence Okparaeke does not challenge with this appeal.

Okparaeke's written supplemental argument in support of the withdrawal of his guilty plea did reach the court a few days later, at the same time as his notice of appeal (A.145-46). After the government responded (ECF No. 201), the court issued a second order denying Okparaeke's motion to withdraw his guilty plea, this time because "he did not send his [supplemental] motion until two days after sentencing, and therefore he is procedurally barred from moving to withdraw his guilty plea" (A.147-48). The written motion was, however, effectively identical to Okparaeke's oral statement prior to his sentencing, and should therefore have been determined on its merits since the government had an intervening opportunity to submit its response.

## STATEMENT OF ISSUES

I. Did the court err when it refused to allow Okparaeke to withdraw his plea to Count One when there was no factual basis that U-47700 was a controlled substance analogue, when U-47700 is an isomer of AH-7921 and therefore controlled pursuant to the DEA's Federal Register notice, and when the regulation making AH-7921 a controlled substance was clearly invalid?

II. Did the court err when it accepted Okparaeke's plea to Count Two when there was no factual basis that acryl fentanyl was a controlled substance analogue, when acryl fentanyl was not a

15

controlled substance and could not have been an analogue of
fentanyl, and when there was no factual basis that acryl fentanyl
had entered the Southern District of New York?

III. Did the court err when it accepted Okparaeke's plea to
Count Three when there was no evidence before it that Okparaeke
was in control of bitcoins, nor that Okparaeke knew that the
bitcoins were not stolen, nor that his statements were material?

IV. Did the court err when it did not accept Okparaeke's plea
agreement pursuant to Rule 11(c)(4), Federal Rules of Criminal
Procedure, and should Okparaeke now be allowed to withdraw from
that agreement?

## ARGUMENT

### THE DEFENDANT'S CONVICTIONS SHOULD BE VACATED AND HIS WITHDRAWAL FROM THE PLEA AGREEMENT SHOULD BE PERMITTED

#### A. Applicable Law and Standards of Review

A district court's decision denying a motion to withdraw a
guilty plea is reviewed for abuse of discretion, any underlyling
findings of fact are reviewed for clear error, and questions of
law are reviewed *de novo*.  United States v. Rivernider, 828 F.3d
91, 104 (2d Cir. 2016).  These standards of review apply to each
of the arguments below.

The law permits a defendant to withdraw a guilty plea after
it has been accepted and before sentencing whenever a defendant
can show "a fair and just reason for requesting the withdrawal"
under Rule 11(d)(2)(B), Federal Rules of Criminal Procedure. *Id.*

16

Factors a court may consider in this regard are "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea." United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004). A guilty plea may also be set aside on direct appeal under Rule 11(e), Federal Rules of Criminal Procedure.

Plea agreement procedures are governed by Rule 11(c), Federal Rules of Criminal Procedure. While Rule 11(c) does not specify a procedure for withdrawing from a plea agreement, this Court has held that "Rule 11(d)(2)(B)'s 'fair and just reason' standard is useful in considering a motion to withdraw from a plea agreement". United States v. Lopez, 385 F.3d 245, 251-55 (2d Cir. 2004).

## B.  The District Court Erred When Accepting Appellant Okparaeke's Guilty Plea To Count One

### (1) The Plea Was Not Supported By An Adequate Factual Basis

Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Here, Okparaeke's guilty plea was not supported by a factual basis because the government failed to provide any factual basis to show that U-47700 was a controlled substance analogue.

Under 21 U.S.C. § 802(32)(A), a controlled substance analogue is defined as a substance--

17

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

During Okparaeke's plea proceeding, the government stated that it would produce "testimony from the expert chemist and expert pharmacologist that U-47700 has a substantially similar chemical structure and pharmacological effect as AH-7921" (A.72). This perfunctory claim clearly failed to establish a factual basis that U-47700 has a stimulant, depressant, or hallucinogenic effect on the central nervous system that was equal to or greater than that of a Schedule I or II controlled substance.

When fulfilling its obligation at a plea allocution to determine whether a defendant's admitted conduct is a crime, a court is "free to rely on any facts at its disposal," including information obtained by making an "inquiry . . . of the attorneys for the government", as long as "the facts relied on are placed on the record at the time of the plea." United States v. Maher, 108 F.3d 1513, 1524-25 (2d Cir. 1997). Rule 11 thus "requires the

18

court to assure itself simply that the conduct to which the
defendant admits is in fact an offense under the statutory
provision under which he is pleading guilty" such that, "were a
jury to accept [those admissions] as fact . . . a guilty verdict
would follow." United States v. Albarran, 943 F.3d 106, 121 (2d
Cir. 2019), quoting Maher, 108 F.3d at 1524, and United States v.
Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

Here, the record contains nothing more than the government's
single isolated remark that it expected its experts to testify at
a trial that "U-47700 has a substantially similar chemical
structure and pharmacological effect as AH-7921" (A.72). Such a
comment about the possible testimony of witnesses about the
structure and pharmacological effect of U-47700 should be held
insufficient to establish that U-47700 was a controlled substance
analogue.

Instead, under Rule 11(b)(3), it was incumbent upon the
district court to make sure that the record reflected adequate
facts to support each essential element of the offense. When the
court instead accepted the government's conclusory statement
without requiring that the record reflect additional information
to establish the structural and pharmacological prongs of a
violation of §§ 802(32)(A) and 813, the factual basis requirement
of Rule 11 was not satisfied and it was clear error for the

19

district court to accept Okparaeke's guilty plea.  His conviction should accordingly be vacated.

**(2)  <u>The Defendant Is Legally Innocent Of Count One</u>**

Apart from the lack of an adequate factual basis to support the guilty plea, the district court also erred when it failed to allow Okparaeke to withdraw his guilty plea even after he demonstrated, prior to his sentencing, that he was legally innocent of the offense charged in Count One.  Okparaeke thus orally advised the district court (A.141-43) that U-47700 was an isomer of AH-7921 at the time the DEA added AH-7921 and its isomers to Schedule I, that he had already mailed a supplemental argument to the court raising this same issue,[1] and that because U-47700 could not be a controlled substance and a controlled substance analogue at the same time, *see* 21 U.S.C. § 802(32)(C)(i), he could not be guilty of distributing U-47700 as a controlled substance analogue when it was already effectively scheduled as an isomer of AH-7921, a Schedule I controlled substance at all relevant times.

---

[1]     The court had not received Okparaeke's written submission at the time of his sentencing (A.142-43) and later declined to consider it because the submission was postmarked after Okparaeke's sentencing (A.147-48). Under the prison mailbox rule, however, it is not the postmark, but the date a prisoner hands a letter to prison officials that controls for timeliness purposes. <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988). The court should therefore have considered the merits of Okparaeke's supplemental argument after he informed the court that he had mailed it to the court prior to his sentencing.

Specifically, on April 14, 2016, the DEA issued a regulation making AH-7921 a Schedule I controlled substance. *See* Federal Register, Volume 81, Number 72, F.R. Doc. No: 2016-08566. This regulation made AH-7921 and its "isomers, esters, ethers, salts and salts of its isomers, esters, and ethers" Schedule I controlled substances. U-47700 is classified as a structural isomer of AH-7921 (*see* https://en.wikipedia.org/wiki/U-47700). Since U-47700, as an isomer of AH-7921, was a controlled substance from the time of the 2016 effective date of this regulation, Okparaeke is legally innocent of possessing or distributing U-47700 as a controlled substance analogue as charged in Count One of the information since that term "does not include . . . a controlled substance" under the statutory definition in 21 U.S.C. § 802(32)(C)(i).

The district court therefore erred when it refused to allow Okparaeke's plea to Count One of the criminal information to be withdrawn based on his legal innocence of the charge. As this Court has recognized, "[a] defendant's assertion of innocence normally weighs in favor of permitting plea withdrawal" since "[c]ourts look more hospitably on a motion to withdraw a guilty plea when the motion is coupled with an assertion of innocence." United States v. Lopez, 385 F.3d 245, 254 (2d Cir. 2004), quoting United States v. Doyle, 981 F.2d 591, 596 (1st Cir. 1992). Courts do so to avoid the "[g]reater injustice [that would be] done to a

21

defendant who may actually be innocent yet is denied a trial than to one who admits guilt but insists on a trial." Lopez, 385 F.3d at 254. The district court should similarly have averted that greater injustice here by granting Okparaeke's motion to withdraw his guilty plea to Count One based on his legal innocence of the charged offense.

**(3) AH-7921 Was Not Lawfully Scheduled As A Controlled Substance**

In the alternative, the Court should vacate Okparaeke's Count One conviction because the DEA regulation making AH-7921 a controlled substance was clearly invalid, a circumstance that, by extension, also nullifies the classification of U-47700 as a controlled substance analogue of AH-7921.

The DEA's authority for scheduling AH-7921 as a controlled substance flowed from 21 U.S.C. §§ 811-812, under which the DEA is obliged to schedule a controlled substance without regard to its usual procedures whenever that scheduling is required by international treaty. Here, in a decision dated March 13, 2015, the U.N. Commission on Narcotic Drugs directed the inclusion of AH-7921 in Schedule I of the Single Convention on Narcotics Drugs of 1961, as Okparaeke advised the court in his motion to withdraw his guilty plea (A.101).

When the DEA scheduled AH-7921 pursuant to this directive, however, it also included the "isomers, esters, ethers, salts and salts of its isomers, esters, and ethers" of AH-7921. These

additional substances were not specified in the U.N. directive
relating to AH-7921. As such, the DEA's scheduling of additional
substances without following the required procedures should be
held an invalid agency action under 5 U.S.C. § 706(2) (requiring
a reviewing court to "hold unlawful and set aside agency action,
findings, and conclusions found to be . . . (A) arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance
with law . . . (D) without observance of procedure required by
law").

Here, 21 U.S.C. 811(d) only gives the Attorney General the
power to schedule drugs without regard to the usual findings and
procedures when scheduling is required by international
obligations of the United States. Such a requirement occurred in
2015, when the U.N. Commission on Narcotic Drugs directed the
addition of AH-7921 to Schedule I of the Single Convention on
Narcotic Drugs (A.101).

If the DEA wished to add any additional isomers, esters.
ethers and salts of AH-7921 to Schedule I as well, it first had to
provide an explanation and observe the notice-and-comment
provisions set forth by Congress in both the Administrative
Procedures Act, 5 U.S.C. § 553(b)-(c), and the Controlled
Substances Act, 21 U.S.C. § 811(a)-(c). These provisions required
the DEA to publish a general notice of proposed rulemaking in the
Federal Register, to give interested persons an opportunity to

23

comment about the proposed addition of isomers, ethers, esters, and salts of AH-7921. The provisions also required the DEA to obtain a binding recommendation from the Secretary of Health and Human Services with respect to the "isomers, esters, ethers, salts and salts of its isomers, esters and ethers" of AH-7921.

Since the DEA did not comply with these requirements, this Court should now hold that the DEA's attempt to schedule anything other than AH-7921 was arbitrary and capricious and not otherwise in accordance with required law and procedure. Accordingly, as AH-7921 was not lawfully scheduled as a controlled substance, and U-47700 could therefore not be a controlled substance analogue of a substance that was not properly scheduled, this Court should set aside Okparaeke's Court One conviction because these circumstances also make him legally innocent of that charge.

**(4)** <u>**The DEA Scheduled The Wrong Chemical Substance**</u>

Finally, the Court should vacate Okparaeke's conviction for possessing and distributing an analogue of AH-7921 because the substance the DEA scheduled was not chemically the same as the substance authorized by the U.N. Commission on Narcotic Drugs. The chemical name of AH-7921 that the Commission authorized for addition to Schedule I of the Single Convention on Narcotic Drugs (A.112) is:

3,4-dichloro-N-{[1-(dimethylamino)cyclohexyl]methyl}benzamide.

24

In contrast, the chemical name of AH-7921 that the DEA actually listed in Schedule 1, *see* 21 C.F.R. § 1308.11(b)(5), was:

3,4-dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide.

A defense expert, Gregory B. Dudley Ph.D., prepared diagrams (A.99, A.128) showing that these differing notations represent two different chemicals. Since Congress only gave the DEA the power to schedule compounds identified by the U.N. Commission, and the Commission identified a chemical substance different than the one scheduled by the DEA pursuant to § 811(d), the wrong substance was scheduled as AH-7921, and that substance cannot serve as a validly scheduled controlled substance. On this basis as well, Okparaeke's conviction for distributing a controlled substance analogue of AH-7921 cannot stand, since U-47700 is only an analogue to the controlled substance identified by the U.N. Commission,[2] and not to the different substance scheduled by the DEA.

**C. The District Court Erred When Accepting Appellant Okparaeke's Guilty Plea To Count Two**

**(1) The Plea Was Not Supported By An Adequate Factual Basis**

Just as it failed to establish a factual basis for Okparaeke's guilty plea to Count One, the government's summary assertion at the guilty plea proceeding - that acryl fentanyl "has a substantially similiar chemical and pharmacological effect of

---

[2] There is no dispute that U-47700 and the form of AH-7921 identified by the U.N. Commission have the same chemical structure.

fentanyl" (A.72) – equally fell short of showing that acryl fentanyl has a chemical structure or an effect on the central nervous system that is substantially similar to a schedule I or II controlled substance, a showing 21 U.S.C. § 802(32)(A) requires. The district court therefore erred when accepting Okparaeke's guilty plea to this charge without first ascertaining for the record some further information about what stimulant, hallucinatory, or depressive effect acryl fentanyl was alleged to have on the central nervous system.

The test for the adequacy of the factual basis of a guilty plea is, again, whether a jury would return a guilty verdict based on the facts elicited at the time of a guilty plea. <u>United States v. Albarran</u>, 943 F.3d at 121. Here, if a jury heard no more than the government's single remark about the chemical structure and pharmacological effect of acryl fentanyl, it would not have convicted Okparaeke of anything.

No facts presented at the time of the guilty plea established that acryl fentanyl had what § 802(32)(A) prescribes: either a substantially similar chemical structure or any of the proscribed effects on the central nervous system of a Schedule I or II drug. Absent a record with such information, the district court clearly erred when accepting Okparaeke's guilty plea to this count.

The plea proceeding also failed to establish another important fact: that the charged importation offense occurred in

26

the Southern District of New York. Venue for importation offenses is specifically controlled by Congress in 18 U.S.C. § 3237, which provides that "[a]ny offense involving . . . the importation of an object . . . into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such . . . imported object move[s]". The imported object in this case, a package of acryl fentanyl, did not move from, through or into the Southern District of New York.

As Okparaeke explained during his guilty plea proceeding (A.86), while the imported substance was "supposed to be delivered to a UPS mailbox in Middletown", a location within the Southern District of New York, the authorities instead "did a controlled delivery. As you know probably through all your experience, law enforcement will switch the substance with like a sham substance. That's what they did in my case. They had intercepted packages like at JFK and then they had done like a controlled delivery." The airport (JFK) where the packages were intercepted is located in Queens County, which is within the Eastern District of New York. *See* 28 U.S.C. § 112(c) ("The Eastern District comprises the counties of Kings, Nassau, Queens, Richmond and Suffolk").

Since the imported package of acryl fentanyl was intercepted in the Eastern District of New York and never transferred to any address in the Southern District of New York (where only a

27

substituted package containing sham materials was delivered), the Southern District was the improper venue for the prosecution of this offense. Okparaeke's Count Two conviction should therefore be vacated on this basis as well.

**(2)  The Defendant Is Legally Innocent Of Count Two**

Apart from the inadequacy of the plea allocution, Okparaeke's guilty plea to Count Two should also be set aside because the importation of acryl fentanyl is governed by 21 U.S.C. § 960(b)(3) and not § 960(b)(1)(F), as charged in the information. These sections provide, in pertinent part:

> § 960(b)(1): In the case of a violation of subsection (a) of this section involving . . . (F) 400 grams or more of a mixture of substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide [*e.g.*, fentanyl] or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl] . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life . . .

> § 960(b)(3): In the case of a violation under subsection (a) of this section involving a controlled substance in Schedule I . . . the person committing such violation shall . . . be sentenced to a term of imprisonment of not more than 20 years . . .

Count Two of the criminal information (A.31-32) alleged that Okparaeke imported into the United States 100 grams and more of acryl fentanyl, a controlled substance analogue under 21 U.S.C. § 802(32) that is "treated as a controlled substance in Schedule I of the Controlled Substances Act, and that is an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide

28

('fentanyl'), in violation of [21 U.S.C.] Sections 813 and 960(b)(1)(F)." Nevertheless, under § 813, a "controlled substance analogue shall . . . be treated, for the purposes of any Federal law as a controlled substance in schedule I", and § 960(b)(3) is the provision that plainly applies to the importation of any such controlled substance.

When Congress enacted these provisions, it intended controlled substance analogues to be treated as controlled substances when using the word "shall". A statute that uses the word "shall" indicates a command, and what follows is "mandatory, not precatory". Mach Mining, LLC v. Equal Employment Opportunity Commission, 575 U.S. 480, 486 (2015); *cf.* National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 109 (2002)(the word "shall" admits no discretion).

Two canons of statutory interpretation should also inform the interpretation of 21 U.S.C. § 960(b)(1)(F)'s reference to any analogue of fentanyl. First, the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis*). *See, e.g.*, Dole v. United Steelworkers of America, 494 U.S. 26, 36 (1990). Second, "general words should be limited to persons or things similiar to those specifically enumerated" *(ejusdem generis)*. United States v. Turkette, 452 U.S. 576, 581 (1981).

29

In regards to "any analogue of [fentanyl]", the placement of this phrase in a group surrounded by other controlled substances logically leads to the conclusion that "any analogue" of fentanyl is itself a controlled substance. Congress clearly considered it so, since "any analogue of fentanyl" is listed with other enumerated substances *(e.g.,* cocaine, heroin, PCP, methamphetamine) in the surrounding subsections of § 960(b)(1).

Any question about what Congress meant when it included "any analogue of fentanyl" in the statute is, moreover, fairly answered by the statute's legislative history. The enhanced penalty provisions applicable to fentanyl analogues were amendments added to the Controlled Substances Act in the Anti-Drug Abuse Act of 1986. *See* Pub. L. No. 99-570 §§ 1002 (amending 21 U.S.C. § 841(b)(1)), 1202 (inserting 21 U.S.C. § 813), and 1203 (inserting definition of controlled substance analogue). This omnibus legislation included a number of legislative changes, such as the enhanced penalties for fentanyl analogues, *id.* at §§ 1001-1009, and other provisions regarding the treatment of "controlled substance analogues." *Id.* at §§ 1201-1204.

Before it was included in the House version of the 1986 Act, the House Judiciary Committee approved the Narcotic Penalites and Enforcement Act of 1986, containing language that is substantially similar to what was ultimately enacted. The House Judiciary Committee Report accompanying that legislation explained that the term "fentanyl analogue" refers to "a controlled substance that is

30

an analogue of fentanyl", but it "does not include fentanyl, nor does it include controlled substance analogues". H.R. Rep. No 99-845, at 17 n.2.

This congressional committee report is considered second only to the statute itself when determining the scope of this legislation.[3] "We focus on the most authoritative and reliable materials of legislative history, including the conference committee report, . . . [which] represents the final statement of terms agreed to by both houses, [and] next to the statute itself it is the most persuasive evidence of congressional intent." Railway Labor Executives Ass'n v. ICC, 735 F.2d 691, 701 (2d Cir. 1984); *see also* Lawrence + Mem. Hosp. v. Burwell, 812 F.3d 257, 266 (2d Cir. 2016) ("A congressional conference committee report is the highest form of legislative history").

Given this background, Congress clearly intended 21 U.S.C. § 960(b)(1)(F) to apply only to controlled substances and not to controlled substance analogues. Therefore, Okparaeke is legally innocent of Count Two of the criminal information because the phrase "any analogue of [fentanyl]" does not include controlled substance analogues, and the district court plainly erred when it accepted Okparaeke's guilty plea to this mistaken charge, despite the requirement in § 813 that any controlled substance analogue shall be treated as a controlled substance.

---

[3] This Court has relied on the same legislative committee report to determine Congress' intent in other respects. *See* United States v. Pressley, 469 F.3d 63, 66 (2d Cir. 2006).

**D. The District Court Erred When Accepting Appellant Okparaeke's Guilty Plea To Count Three**

**(1) The Plea Was Not Supported By An Adequate Factual Basis**

Count Three of the criminal information alleged that Okparaeke had violated 18 U.S.C. § 1001 by advising government representatives that 680 bitcoins, in accounts he previously controlled, had been stolen and were no longer in his control. During his guilty plea proceeding, however, Okparaeke never said that these 680 bitcoins were still in his control when he spoke to the federal prosecutor. Instead, he indicated that "I actually gave them the ability to access the bitcoins as soon as I had the ability to give them the ability to access the bitcoins" (A.85).

A conviction under § 1001 required something more. *See* United States v. Lange, 528 F.2d 1280, 1286 n.10 (5th Cir. 1976)("'false' as used in § 1001 must mean more than simply incorrect or untrue. An intent to deceive or mislead is required under the act"). Here, the plea allocution established that, once Okparaeke had the ability to turn over the bitcoins to the government, he did so promptly, conduct that is inconsistent with an intent to mislead or deceive. Moreover, the plea allocution does not show that Okparaeke was actually in control of the bitcoins when he spoke with the federal authorities.

Further, the record does not establish that Okparaeke made false statements in an effort to knowingly and willfully mislead

32

the government. Describing his statement about the possibility that bitcoins had been stolen, Okparaeke frankly informed the court that he "had reason to believe it was improbable, if not impossible, so I knew it was false" (A.85). But § 1001 only prohibits people from deliberately misleading government officials, not from speculating about probabilities. Since the record does not establish that Okparaeke knew the bitcoins were not stolen and misled the government about it, nor that he controlled the bitcoins at the time he spoke to the government,[4] the record is insufficient to create a factual basis for Okparaeke's guilty plea to this charge and his conviction should be vacated.

**(2)** **The Court's Explanation of Materiality Was Wrong**

During the plea allocution, Okparaeke was asked to clarify whether, when he made statements to government authorities that he recognized to have been improbable or impossible and therefore false, he understood that his statements were material (A.85, A.88). To that end, the court asked Okparaeke to "acknowledge that your false statements about the bitcoins were about a matter that was important to the government's investigation", and Okparaeke agreed that he knew it would have been important (A.88-89).

---

[4]     The government also did not address how its office had jurisdiction over this offense at the plea proceeding.

33

For a statement to be material, however, it must be more than "important". It must additionally have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." United States v. Caplan, 703 F.3d 46, 79 (2d Cir. 2012). Here, Okparaeke's speculation that bitcoins may have been stolen did not fulfill either of these definitions: it did not influence the government's decision to require the forfeiture of bitcoins, nor did it distract investigators who achieved control over the bitcoins as soon as Okparaeke could arrange it. His conviction of Count Three should accordingly be set aside on this basis as well.

**E.  <u>Withdrawal From The Plea Agreement Should Be Permitted</u>**

The plea agreement between the government and Okparaeke was of the type this Court has classified as a "Charge Bargain" under Rule 11(c)(1)(A), or a "Binding Agreement" under Rule 11(c)(1)(C), Federal Rules of Criminal Procedure. See United States v. Lopez, 385 F.3d 245, 248-50 (2d Cir. 2004). The agreement qualified as a "Charge Bargain" because the government agreed to dismiss pending charges and not to bring additional charges, and as a "Binding Agreement" because the parties agreed to a stipulated Guideline range from which neither side would ask the court to depart upward or downward (A.23, A.25-26).

34

Under the federal rules, plea agreements of the types defined in Rules 11(c)(1)(A) and 11(c)(1)(C) must be accepted by the district court. *See* Rule 11(c)(4) ("If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment").[5] Okparaeke pleaded guilty pursuant to this agreement in October 2020, the guilty plea was accepted and approved by the district court on February 4, 2021 (A.93), Okparaeke was sentenced on July 30, 2021, and the judgment eventually issued on November 1, 2021 (A.149-57).

While the judgment inspecifically indicated that "Count(s) underlying . . . are dismissed on the motion of the United States" (A.149), the district court at no point expressly accepted the plea agreement or informed Okparaeke that the agreed disposition was otherwise made a part of his judgment. Since the court plainly erred when not following the requirements of Rule 11(c)(4) by accepting the plea agreement, the Court should permit Okparaeke's

---

[5]     Advisory committee notes to this Rule provide that it is "critical to a type (A) or (C) agreement . . . that the defendant receive the contemplated charge dismissal or agreed-to sentence. Consequently, there must ultimately be an acceptance or rejection by the court of a type (A) or (C) agreement so that it may be determined whether the defendant shall receive the bargained-for concessions or shall instead be afforded an opportunity to withdraw his plea."

35

withdrawal from the plea agreement at the same time as his convictions pursuant to that agreement are vacated.

## **CONCLUSION**

In conclusion, appellant Chukwuemeka Okparaeke asks that this Court vacate his convictions as to all three counts of the criminal information, and allow him to withdraw from his plea agreement that was never accepted by the district court.

Dated: New York, New York
      March 1, 2022

/s/
_____
Chukwuemeka Okparaeke
*Pro Se* Appellant
No. 78867-054
FCI Fairton
P.O. Box 420
Fairton, New Jersey 08320

36

## **CERTIFICATE OF COMPLIANCE**

Georgia J. Hinde, as standby appointed counsel for the *pro se* appellant Chukwuemeka Okparaeke, certifies that the foregoing brief conforms to the requirements of Rule 32(a)(7)(B)-(C) of the Federal Rules of Appellate Procedure in that, according to the word-processing system used to prepare this brief, the brief (excluding tables of contents and authorities) contains approximately 8,707 words.

Dated: New York, New York
        March 1, 2022


 _____/s/_____
        Georgia J. Hinde